Filed 11/4/13  P. v. Price CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038436 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1111184) |
| v. | |
| LEO DALTON PRICE et al., | |
| Defendant and Appellant. | |

Defendants Leo Dalton Price and Kristina Pelache appeal a judgment entered following a jury trial.  On appeal, Price asserts the trial court erred by not declaring a doubt during his trial and sentencing as to his competence pursuant to Penal Code section 1385.[1]  Pelache asserts the trial court erred by imposing probation conditions that were unconstitutionally overbroad.

## STATEMENT OF THE FACTS AND CASE

The instant case arises out of an attack perpetrated by Price, Pelache, and Price's brother, Alex, on Price's second cousin, Greg.  In 2011, Greg was homeless, and was sleeping in a shed on his 92-year-old aunt Carmen's property.  Carmen is Price's grandmother.  After the death of Price's father in 2011, Carmen told Price to not to come around her property anymore.

---

[1]  All further unspecified statutory references are to the Penal Code.

Price resented the fact that Carmen permitted Greg to stay on her property, but would not allow Price to come around. On May 20, 2011, around 4:00 a.m. while Greg was sleeping in the storage shed on Carmen's property, Price yanked the door open. Price told Greg he should leave because he was not supposed to be there. Price told Greg to shut up, then called someone on his cell phone and said, "He's in here, get in here."

After the cell phone call, Price's brother, Alex entered the shed and began punching Greg. Price also began punching Greg and kicking him in the face. At some point during the attack, Pelache entered the shed and said, "Grandma turned the light on." Alex and Price covered Greg's mouth so he could not make any noise. Price told Pelache to go wait in the car. Before she left the shed, she told Greg he was "getting what you deserve." Alex and Price hit Greg a few more times, then left. When Greg was alone, he discovered that his wallet, car keys, phone, flashlight, and a buck knife were missing from the shed.

As a result of the attack, Greg had cuts to his nose, lip and chest. The left side of his face was swollen, and the vision in his left eye was affected for weeks. Greg also lost several teeth, and had continuing headaches.

After the attack, Price sent letters to Greg and Carmen apologizing for his actions, and asking for forgiveness. At trial, Price and Pelache denied they went to Carmen's house, and denied they attacked Greg.

After a jury trial, defendants were found guilty of assault with force likely to cause great bodily injury (§ 245, subd. (a)(1)); battery with serious bodily injury (§§ 242, 243, subd. (d)); first degree burglary (§§ 459, 460, subd. (a)); and false imprisonment (§§ 236, 237). In addition, the jury found that Price had personally inflicted great bodily injury within the meaning of sections 12022.7, subdivision (a), 1203, subdivision (e)(3), 667, and 1192.7. The jury also found that Price had suffered a prior conviction within the meaning of sections 667, subdivisions (b) through (i), and 1170.12.

2

Price was sentenced to serve 12 years in state prison. The court sentenced Pelache to four years in state prison, suspended execution of sentence, and placed her on three years of formal probation. As a condition of probation, the court ordered that Pelache not "knowingly possess or consume alcohol or illegal drugs or go to places where alcohol is the known primary item for sale." Both Price and Pelache filed notices of appeal.

## DISCUSSION

Defendant Price asserts on appeal that the judgment must be reversed, because the trial court did not declare a doubt as to his competency pursuant to section 1368. Pelache asserts the trial court erred in imposing probation conditions that were unconstitutionally overbroad.

### *Price's Competency*

During the trial in this case, after the prosecution's case in chief and during the middle of the cross-examination of Price, Price's counsel declared a doubt as to Price's competency and asked the court to suspend proceedings pursuant to section 1368. Counsel argued that she thought Price was incompetent because he believed Greg had killed his father, made paranoid comments about the court system, commented in front of the jury that his counsel was not helping him, and commented about trying to save his brother, Alex from two life sentences. Counsel believed that defendant had "decompensated during the course of the trial probably due to the stress of the trial itself." Counsel also noted that defendant could not stop fidgeting at counsel table, and said "hello" to his grandmother, Carmen, when she was a witness at the trial.

The court disagreed with Price's counsel's assessment, stating that in its view, Price was recalcitrant and uncooperative, but was not incompetent to stand trial. Moreover, the court noted that Price's disagreement with his counsel's "very good advice" did not make him incompetent. The court stated that based on its own observation of Price's behavior, it had no doubt about Price's competency.

3

At sentencing, Price had a different defense counsel, who also declared a doubt as to Price's competency, and requested that the court appoint doctors to evaluate Price under section 1368.  The court denied Price's counsel's request noting that Price had been interviewed for the probation report and placed in the general jail population without any question being raised by either probation or jail personnel about Price's competency.  The court concluded that Price was competent.

Consistent with the due process clause of the Fourteenth Amendment and state law, the state may not try or convict a mentally incompetent defendant.  (*Drope v. Missouri* (1975) 420 U.S. 162, 171-172; § 1367 et seq.)  Under the state standard for competency, which is essentially the same as the federal standard, a defendant who is "unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner" is incompetent to stand trial. (§ 1367; see *Dusky v. United States* (1960) 362 U.S. 402 [" 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' " and a " 'rational as well as factual understanding of the proceedings against him' "].)

If "a doubt arises in the mind of the judge as to the mental competence of the defendant" at any time prior to judgment, the court is required to conduct a hearing pursuant to section 1368 to determine the defendant's competence.  (§ 1368; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1111.)  In particular, the trial court is required to conduct a section 1368 hearing to determine a defendant's competency "whenever substantial evidence of incompetence has been introduced.  [Citations.]  Substantial evidence is evidence that raises a reasonable doubt about the defendant's competence to stand trial.  [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 951-952.)  By contrast, evidence that "merely raises a suspicion that the defendant lacks present sanity or competence but does not disclose a present inability because of mental illness to participate rationally in the trial is not deemed 'substantial' evidence requiring a

4

competence hearing." (*People v. Deere* (1985) 41 Cal.3d 353, 358, disapproved on other grounds in *People v. Bloom* (1989) 48 Cal.3d 1194, 1228, fn. 9.)

In determining whether there is substantial evidence of incompetence, the court must consider all of the relevant circumstances, including defendant's behavior and demeanor, prior medical opinion, defense counsel's experience, and the court's own observations. (*Drope v. Missouri, supra*, 420 U.S. at p. 180; *People v. Howard* (1992) 1 Cal.4th 1132, 1164.) "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." (*Drope v. Missouri*, *supra*, 420 U.S. 162, 180.) However, "more is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his [or her] defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense [citation]." (*People v. Laudermilk* (1967) 67 Cal.2d 272, 285.) And, the burden is on the defendant to establish that he or she is not competent to stand trial. (§ 1369, subd. (f); *People v. Marshall* (1997) 15 Cal.4th 1, 31.) On appeal, we give the trial judge's determination great deference. "An appellate court is in no position to appraise a defendant's conduct in the trial court as indicating insanity, a calculated attempt to feign insanity and delay the proceedings, or sheer temper." (*People v. Merkouris* (1959) 52 Cal.2d 672, 679.)

" 'A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial. [Citations.] The failure to declare a doubt and conduct a hearing when there is substantial evidence of incompetence, however, requires reversal of the judgment of conviction. [Citations.]' [Citation.]" (*People v. Lewis* (2008) 43 Cal.4th 415, 525.)

5

The trial court in this case did not declare a doubt as to Price's competency, thus the question is whether there was substantial evidence of his incompetence demonstrated. Price contends his incompetence was evidenced by his own behavior. For example, he points to the fact that he had difficulty following his counsel's questions on direct examination, and responded with inappropriate answers. Price's answers on direct included testimony that the judicial system was working against him, he was convicted of a prior felony because the county turned his family against him, that he was forced to defend himself because defense counsel would not, and that Greg falsely accused him of the attack because Greg killed Price's father and did not want him to know about it. Price also testified that he wrote the apology letters to Carmen and Greg to appeal to the "Christian[s]" on the jury. Price asserts his testimony and behavior at trial was "bazaar, paranoid, and nonsensical," and necessitated a hearing to determine his competency.

Price asserts that in addition to his behavior at trial, the circumstances surrounding his sentencing also constitute substantial evidence of Price's incompetence. At the time of sentencing, Price's counsel informed the court that Price was unable to understand the proceedings against him and meaningfully assist counsel with preparation of a motion for a new trial and sentencing. Counsel also stated that Price was under mental health care and was receiving medication while in custody. Price asserts that this information, coupled with the prior declaration of doubt by counsel during trial, was sufficient to establish substantial evidence of Price's incompetence.

Based on a review of the record of Price's demeanor and behavior, we do not find substantial evidence of his incompetence. Although Price did make strange comments during his testimony, something more than bizarre statements and behavior is needed to raise a doubt concerning a defendant's competence. (*People v. Laudermilk*, *supra*, 67 Cal.2d at p. 285.) There is not substantial evidence demonstrating Price did not understand the nature of the proceedings against him or that he could not assist counsel in

6

his own defense. (§ 1367; see *Dusky v. United States, supra,* 362 U.S. 402.) In sum, Price has failed to demonstrate that the court abused its discretion in declining to hold a competency hearing pursuant to section 1368.

### *Pelache's Probation Condition*

As a condition of probation, the court ordered that Pelache not "knowingly possess or consume alcohol or illegal drugs or go to places where alcohol is the known primary item for sale." Pelache asserts this condition is unconstitutionally overbroad on its face and as applied to Pelache.

The basis of Pelache's argument is that the portion of the condition that prohibits her ability to go to places where alcohol is the primary item of sale restricts her right to interstate travel, and restricts her ability to work in her chosen profession as a bartender. In addition, Pelache asserts it is the consumption of alcohol that is related to future criminality, not being in a place where alcohol is sold.

By failing to object in the trial court, Pelache has forfeited her challenge to the reasonableness of the conditions. (*In re Sheena K.* (2207) 40 Cal.4th 875, 881-882, 885; *People v. Welch* (1993) Cal.4th 228, 232-235.) Pelache's claim that the probation condition is unconstitutional as applied, because it restricts her right to work as a bartender cannot be considered on appeal, because she did not raise the issue in the trial court.

### *Ineffective Assistance of Counsel for Failure to Object*

Pelache asserts that she was denied effective assistance of counsel because her attorney did not object that the portion of the probation condition prohibiting her from going to a business where alcohol is the primary item for sale is unconstitutional as applied to her.

A defendant claiming ineffective assistance of counsel has the burden of showing (1) deficient performance under an objective standard of professional reasonableness, and

7

(2) prejudice. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) Prejudice must be affirmatively proved. " 'It is not enough for the defendant to show that [counsel's] errors had some conceivable effect on the outcome of the proceeding. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*Id*. at pp. 217-218.)

Here, Pelache cannot establish she was prejudiced by her counsel's failure to object to the portion of the probation condition that restricts her from going to businesses where alcohol is the primary item for sale. "Probation conditions have been upheld even though they restrict a probationer's exercise of constitutional rights if they are narrowly drawn to serve the important interests of public safety and rehabilitation [citation] and if they are specifically tailored to the individual probationer." (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1084 [probation conditions affecting the freedom of travel, association, and assembly].) Although the condition impacts Pelache's ability to work as a bartender, it is narrowly drawn to prevent Pelache from consuming alcohol, and promotes both public safety and Pelache's rehabilitation. Pelache is an admitted alcoholic, with a criminal record that includes a conviction for driving under the influence of alcohol. The condition withstands constitutional scrutiny, because it is reasonably related to Pelache's future criminality. As such, there is no evidence that had defense counsel objected to the condition, the court would not have imposed it.

Because Pelache cannot demonstrate prejudice from her counsel's failure to object, she cannot demonstrate that she was denied effective assistance of counsel.

### *Facial Constitutional Challenge*

To the extent that her constitutional claims present pure questions of law that can be resolved without reference to the record developed in the trial court, they are not

8

forfeited. (*Sheena K., supra*, 40 Cal.4th at p. 889.) We review facial constitutional challenges to a probation condition de novo. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183.)

Pelache argues that the alcohol condition at issue here affects her basic constitutional right of freedom of travel. "Thus, in order to survive constitutional scrutiny, such condition[s] not only must be reasonably related to present or future criminality, but also must be narrowly drawn and specifically tailored to the individual probationer." (*Ibid.*) A "probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as constitutionally overbroad." (*Sheena K., supra*, 40 Cal.4th at p. 890.)

In this case, Pelache challenges a condition that contains language that restricts her right to go to places where alcohol is the primary item of sale on the ground that it infringes her constitutional right to travel. The right to travel (which includes interstate, intrastate, and "intramunicipal" travel) is "elementary in a free society" and protected by the United States and California Constitutions. (*In re White* (1979) 97 Cal.App.3d 141, 148-149.)

The aspect of the condition that restricts Pelache from going to places where alcohol is the primary item of sale is not unconstitutionally overbroad. The purpose of the condition is to prevent the consumption of alcohol. It is specifically tailored and narrowly drawn, because it only restricts Pelache from businesses where alcohol is the *primary* item for sale, not from every establishment where alcohol is sold. Because of its specificity, the condition has very little impact on Pelache's constitutional right to travel. Therefore, the condition is valid and not unconstitutional.

### DISPOSITION

The judgment is affirmed.

9

_____

RUSHING, P.J.

WE CONCUR:

_____

PREMO, J.

_____

ELIA, J.

10